No. 13,702.

SUCCESSION OF ANTOINE MARINOVICH. OPPOSITION OF MATTHEW JONES, UNDER-TUTOR.

### SYLLABUS.

1. A tutrix vacates her trust by the fact of remarriage without complying with the requirements of Article 254 of the Civil Code.

2. But this vacation of the office of tutrix does not have the effect of also vacating the office of under-tutor.

3. It is not only the right but the duty of the under-tutor, if he think the interests of the minors so require, to oppose the reappointment of the newly-married widow as tutrix.

4. A family meeting should be composed of *relations* of the minors; *in default* of relations, of friends.

5. The law requires the presence of the under-tutor at family meetings, and one held without notice to him and without his presence will be set aside.

6. It having come to the knowledge of the trial judge that circumstances exist which made the appointment of a tutor to the minors necessary, his action in ordering steps to be taken to that end was proper, and this without regard to whether or not this relief was specially asked for on their behalf.

APPEAL from the Eleventh Judicial District, Parish of Natchitoches—*Porter, J.*

*Pierson & Walmsley* for Plaintiff, Appellee.

*Jack & Fleming* for Defendants, Appellants.

The opinion of the court was delivered by

BLANCHARD, J. The question presented by this appeal is the legal sufficiency of family meeting proceedings taken in the matter of the appointment of a dative tutor to minors.

Antoine Marinovich died in 1896, leaving a widow and eleven descendants. Four of the latter were, at the time, majors; the remainder minors.

The widow and mother was, in due course, confirmed as natural tutrix of the minors, and her son-in-law, Matthew Jones, who had married one of the daughters of age, was appointed under-tutor and qualified as such.

In September 1899 the widow contracted a second marriage. This marriage deprived her *ipso facto* of the tutorship, because of her failure to comply, previous to its celebration, with the mandatory requirements of C. C. 254.

In May 1900, following this second marriage, the former widow, who had meanwhile become Mrs. Dominique Rutolo, presented a petition to the District Court, aided therein by her husband, in which she averred the fact of her marriage with Dominique Rutolo, and her failure, prior to the marriage, to convoke a family meeting to have herself retained as tutrix of the minors of her first marriage.

She represented the necessity of her continued tutorship, and prayed for the calling of a family meeting to advise as to her appointment as dative tutrix, and as to dispensing with the giving of bond and security as such.

Assuming in her petition that the office of undertutor had also become vacant, she prayed that Antoine Marinovich, the major brother of the minors, be appointed to that office.

She named in her petition five persons who were to compose the family meeting. None of these were relatives of the minors; they were represented to be friends.

The clerk of court issued an order in accordance with the prayer of the petition; the family meeting was called; the five friends were appointed to compose it.

The meeting was held and it was recommended that Mrs. Marie S. Rutolo, the mother, be appointed tutrix, and Antoine Marinovich, the brother, be appointed under-tutor.

It was further recommended "should the same be necessary in law," that Dominique Rutolo, the step-father, be appointed co-tutor.

The family meeting also advised that the tutrix be dispensed from giving bond and security.

This was followed by an order or judgment, signed by the clerk of court, homologating the proceedings of the family meeting and appointing Mrs. Rutolo, tutrix, her husband, Dominique Rutolo, co-tutor, and Antoine Marinovich, under-tutor.

But before these parties qualified in these several capacities, Matthew Jones, the undertutor by first appointment, filed an opposition in the form of a petition addressed to the district judge.

He represented himself to be the under-tutor of the minors, and as such opposed the appointment of tutrix and undertutor to them as sought to be effected under the proceedings of the family meeting above referred to.

One of the grounds of his opposition was that the alleged family meeting was composed entirely of friends, whereas there were at the time residing in the parish two brothers of age of the minors, and others near of kin, none of whom were notified of the meeting, or called to take part in the same as members thereof.

Another ground was, the family meeting was held, its proceedings conducted and deliberations concluded without notice to him (opponent) as under-tutor, and without the presence, sanction or approval of an under-tutor.

The prayer of the opposition was that the proceedings of the family meeting be vacated; that the order of the clerk of court homologating same and appointing the parties named, respectively, as tutrix, co-tutor and under-tutor be set aside; that he (opponent) be recognized as the lawful under-tutor of the minors; and that the court take such further proceedings as their interest might require in the premises.

Later, an amended opposition was filed setting up other grounds for the exclusion of the parties recommended by the family meeting for appointment as tutrix, co-tutor and under-tutor, but the view we take of the case renders it unnecessary to notice the same.

By exception and answer filed, defendants in opposition contested the right of the opponent to stand in judgment "under the form and proceeding which he has here instituted," and denied his capacity as under-tutor "either in law or fact."

It was also set up that the petitions in opposition disclosed no cause of action and asked for no relief the court could grant.

Admitting the second marriage and confessing that its celebration without taking steps for the widow's retention in the tutorship vacated the latter, she yet claimed the right in exclusion to all others of the dative tutorship.

There was general denial of the averments of the opposition, and matters of defense otherwise were set up, mainly in reply to the amended petition in opposition, which, as before stated, it is not deemed necessary to consider.

There was judgment below sustaining the opposition, to the extent of decreeing that the family meeting held in May 1900 was illegal, its actions and recommendations void and vacating the same, as well as revoking and setting aside the clerk's order conditionally homologating the proceedings thereof.

It was further ordered that a family meeting be convoked and held before the clerk of court on a day fixed, to be composed of relations of the minors residing in the parish, and named as members thereof the three major brothers of the minors, Louis Wilson, their brother-in-law, and J. A. Sampiti a friend of the family—the latter in default of other relatives or kindred of the minors residing within thirty miles. It was directed that this family meeting be charged with the duty of selecting and recommending to the court the name of a discreet and responsible person to be appointed tutor to the minors and to advise the court as to whether or not such tutor should be dispensed from giving bond. From this judgment defendants in opposition prosecute this appeal.

*Ruling*—The opponent, Matthew Jones, had been legally appointed under-tutor and he had qualified in that capacity.

The tutrix of this tutorship vacated her trust by the fact of remar-

riage without complying with the requirement of Article 254 of the Civil Code with regard to her retention of the tutorship.

Grant vs. Maier, 32 La. Ann. 51; 34 La. Ann. 129.

But this vacation of the office of tutrix did not have the effect of also vacating the office of under-tutor. On the contrary, the office of under-tutor must be held to have continued to exist in order that the duties enjoined by C. C. 279 might be fulfilled.

That article is to the effect that the tutorship does not devolve on the under-tutor when it is vacated; but when it becomes necessary to appoint another tutor, it is the duty of the under-tutor, *under his responsibility,* to cause such appointment to be made.

The point was directly decided in the Tutorship of Bales, 2 La. Ann. 942, where it was held that vacation of the office of tutrix by the remarriage of the widow without the previous holding of a family meeting and its recommendation of retention of herself in that capacity, does not cause the appointment of the under-tutor to cease and determine.

See also Gassen vs. Palfrey, 9 La. Ann. 560.

The under-tutor, in this instance, should have taken steps, following the remarriage of the widow, to cause a tutor to be appointed, and was remiss in his duty by failing to initiate proceedings to this end.

When, however, some eight months following the marriage, the former widow and her husband took proceedings for the reappointment of herself as tutrix, it was not only the right but the duty of the under-tutor, if he thought the interests of the minor so required, to oppose her appointment and that of the new husband as co-tutor. C. C. 276, 277.

The exception, therefore, to his capacity to stand in judgment herein is without force.

As to the form of the proceeding adopted, the exception is equally untenable. The steps taken are regarded in the nature of an opposition to the family meeting as constituted, to the homologation of its action, to any effect being given to its recommendation, and to the qualification of the tutrix, co-tutor and under-tutor named by the meeting.

This under-tutor had not been apprised of the intention to hold this family meeting and had received no notice to attend. He was not present at the meeting and did not know of its having been held until some time subsequent to the fact.

When he did, he took immediate steps in opposition to its action, and before the parties qualified under its recommendations.

The law requires the under-tutor to be present at family meetings. *He must be present for the purpose of advising,* is its imperative mandate (C. C. 276), and this family meeting held without notice to the under-tutor and without his presence is a nullity.

It is null on the other ground, too, viz:—that it was composed entirely of friends of the minors, when the fact was and is that several brothers of age of the minors resided in the parish. These were not named as members in the order, were not asked to become members, were not notified to attend the meeting, and were not present at the meeting.

They should have been summoned as members. Friends may become members of a family meeting when there is a default of relations. This is the plain direction of the law. C. C. 281, 282, 286, 287.

The foregoing suffices to sustain the judgment of the District Court declaring this family meeting illegal and its action void.

We decline, in this proceeding, to go into the consideration of other matters not made issues by any pleading filed, but advanced in argument submitted on behalf of defendants in opposition.

Besides, having judicially alleged the fact of her second marriage, the mother can not be heard by pleas, evidence or argument to either deny it, or impeach its validity, or dispute its legal effects. Neither can she be heard to gainsay her judicial admission, made in a former suit, of the legitimacy of those hereinbefore referred to as brothers of age of the minors who should have been called as members of the family meeting.

It having come to the knowledge of the trial judge that circumstances exist which made the appointment of a tutor to the minors necessary, his action in ordering the convocation of a family meeting of the relations of the minors to recommend a tutor was eminently proper, and this without regard to whether or not this relief was specially asked on their behalf.

C. C. 307, 312.

We find, however, that it was asked in the petition of opposition filed in these words:—"that the court take such further proceedings as the interest of said minors may seem to require."

With regard to the appointment of tutor or tutrix—on whom it should be bestowed—the question does not properly arise herein.

Judgment affirmed.