On Rehearing.
MONROE, J.
Recapitulating, briefly, the main facts of this case: In May, 1894, Ermance Doucet (wife of Eli Ledoux) and Marie Doucet (wife of Jean N. Simon), daughters of Achille Doucet, deceased, brought suit against their mother, who was insane, and against their' four brothers, who were minors, for the partition of a quarter section (161.22 acres) of land (being the N. W. % of section 29, township 8 S., range 1 W.) in the parish of Acadia, which they alleged was indivisible in kind and should be sold. - At their instance William Reed was appointed curator ad hoc, to represent the mother, and Rudolph Reed was appointed to represent the minors, and on confirmation of default there was *35 judgment (June 25, 1894) decreeing that the property was not susceptible of division in kind and ordering that it be sold at public auction for cash as to the interest of the major co-owners, and on terms to be fixed by a family meeting as to the interest of the minors. It was further ordered that a family meeting be convened, and that E. W. Lyons, sheriff, be appointed “receiver” to make the sale and distribute the proceeds. A family meeting (or what is said to have been a family meeting) composed of the two curators (who had been appointed to represent the mother and the minors, respectively) and three other persons, was accordingly held, and recommended that the property be sold for cash.
On August 11th, following, a commission was issued to the sheriff, reading:
“By virtue of a judgment of the * * * district court, and in pursuance of the recommendation of a family meeting * * * in the interest of the minors, * * * you are hereby authorized and commissioned to sell, for cash, according to law, to the highest bidder, at the principal front door of the courthouse, on Saturday, August 11, 1894, the following described property, * * * to wit: The southwest quarter of section 29, * * * containing 161.21 acres. * * * ”
The sheriff’s return, made on the same day, reads in part as follows, to wit:
“I proceeded * * * to make said sale * * * by first reading the aforesaid commission, as, also the advertisement of the sale * * * contained in the Orowley Signal newspaper for 80 full days, and by announcing the terms and conditions of sale, to wit, cash, and also had said property duly appraised by two disinterested appraisers, chosen by plaintiffs and defendants in suit, whereupon I proceeded to sell and adjudicate said property to the persons below named, they being the last and highest bidders therefor, on said terms, to wit: (1) The west half of the N. W. quarter of section 29, * * * containing 80.61 acres, * * * to William Duson, for the price and sum of $750. [Signed] W. W. Duson. (2) The east half of the aforesaid section * * * to Mrs. Celima Reed, widow, through her curator, Rudolph Reed, for * * * $300.
his
“[Signed] Rudolph X Reed.”
mark
Thereafter, on August 21st, plaintiffs presented a petition to the clerk of the court, alleging that, when the family meeting was held, no undertutor had been appointed to the minors, and praying that Jean N. Simon (who was the husband of one of the plaintiffs) be appointed, and an order to that effect was made, which was followed by the filing of a petition, in the name of the under-tutor, for the homologation of the proceedings, and an order of homologation was made by the clerk, as of date July 5th, nunc pro. tunc.
In October, 1906, the minors, who had then attained majority (with the exception of Dominique, who became a major soon after-wards), brought this suit against Michael Eenelon, as the party in possession, for the recovery of their original interest in a portion of the tract in question (which portion is described as the whole of block 4, containing 14 lots; lots 1, 2, 3, 4, 5, 6, 9, 10, 11, and 12, of block 5; the whole of block 10, containing 16 lots, numbered from 1 to 16; lots 2, 3, 4, 5, and 6, of block 12; and lots 9, 10, 11, 12, 13, and 14, of block 3- — all in the town of Iota), praying that the proceedings leading up to and including the partition sale be decreed null, and that they be recognized as the owners, in the proportions of one-sixth of one-half, each, of the property described. The grounds of attack and defense are fully set forth in the opinion heretofore handed down, in which it was held that, upon the theory of the absolute nullity of the proceedings resulting in the sale of the property, it is competent for plaintiff to sue for its recovery by means of a petitory action (of course, against the party in possession), without any previous action to have the nullity of these proceedings declared; that plaintiffs are not estopped to bring such petitory action; that the prescription of five years, relied on by defendant, is inapplicable. It was further held that plaintiffs’ theory as to the nullity of' *37 the sale by which their title is said to have been devested is sustained by the facts; that, whilst suit was brought for the partition, by licitation, of the whole of the northwest quarter, the commission to the sheriff ordered him to sell the southwest quarter, of section 29; that said commission issued only on the day of the sale, and hence that, in advertising the property during the preceding 30 days, the sheriff acted without authority; that, under a judgment decreeing the sale of one quarter section, and a commission ordering the sale of another (but in either case contemplating the sale of the whole tract at one and the same time, as property that was not susceptible of division in kind), the sheriff made the sale in two lots, selling the west half of the tract to one buyer and the east half to another, and that such sales were unauthorized. It is now said that the case has been decided upon a point never tendered by the pleadings, and never argued in either court.'
The petition alleges that Mesdames Ledoux and Simon instituted suit, alleging that the property described (N. W. % of section 29, township 8 S., range 1 W.) “was not susceptible of division in kind and that they desired to have a partition by licitation of said property, * * * and reserved their right to have the family meeting convoked to fix and determine the terms of sale * * * in so far as said minors were concerned; * * • that, by judgment rendered June 25, 1894, * * * the court decreed a partition sale, for cash, as demanded, for the interest of plaintiffs, at public auction, after legal advertisement, and, as to the interests of said minors in said property, decreed that it be sold on such terms as might be fixed by the family meeting to be held in the interest of said minors, * * * and decreeing the appointment of E. W. Lyons, sheriff, to make the partition sale and to distribute the proceeds of sale, as receiver, etc.; that on the 5th day of July, 1894, the following persons * * * assembled * * * recommended that the interest in said land of your petitioners, who were then minors, be sold for cash; * * * that your petitioners had no under-tutor when said family meeting was held; * * * that the proceedings of the so-called family meeting were filed July 5, 1894, and that in a petition filed August 21, 1894, by * * * the attorney who instituted the original proceedings for said partition, * * * it was alleged that at the time said family meeting was held said minors * * * had no undertutor, wherefore it was prayed that Jean Simon, the husband of Marie Doucet [one of the plaintiffs in said proceeding] be appointed undertutor, * * * and that, on said 21st day of August, 1894, the said R. T. Clark, clerk of the court * * * appointed the said Jean N. Simon undertutor; * * * that, by petition filed in the name of the un-dertutor, * * * the undertutor prayed that the proceedings of said family meeting be approved and homologated, and the clerk of the court did approve and homologate same, nunc pro tunc, dating the order and filing July 5, 1894, * * * thus antedating the petition for the appointment and the order appointing Jean N. Simon undertutor; * * * that on the 11th day of August, 1894, a commission was issued to said sheriff * * * authorizing him to sell the S. W. ]4 of section 29, township 8 S., range 1 W., containing 161.21 acres, and that on the same day he adjudicated the following described property, to wit: First: The W. % of the N. E. of section 29 * * * to William W. Duson, for * * * $750; second, the E. % of the aforesaid section, same township and range, * * * adjudicated to Mrs. Celima Reed, widow, through her curator ad hoc, Rudolph Reed, for * * * $300. * ♦ * Tour petitioners now represent that the proceedings leading up to and including the proceed-the sale made of the property above described, *39 ings of the so-called family meeting, and also are absolutely null and void, and are patent upon tbe face of tbe record, for the allegations and reasons hereinaVove made, and in tbe particulars and for tbe reasons following, to wit [italics by tbe court].” And then follow certain specifications, in wbicb some of tbe allegations, including that to tbe effect that “tbe commission to a sheriff to make the sale was issued on tbe same day the sale was effected,” are repeated, whilst others, including the allegations that the judgment ordered the sale of one tract and tbe commission of another, and that the sheriff, acting-under said commission, made tbe sale in two lots, instead of selling tbe tract as a whole, are not repeated. There was, however, no necessity for such repetition, and, as plaintiffs distinctly state that the proceedings and also the sale, are absolutely null and void, and are patent upon tbe face of the record, “for tbe allegations and reasons hereinabove made and in the particulars and for the reasons following,” we are at a loss to understand how it can be asserted, and insisted upon, that the issues upon which the case was decided are not presented by the pleadings. It is true that the points in question were not specifically urged in the argument upon the original hearing in this court; but, whilst the silence of counsel may, in some cases, authorize the presumption that a particular ground of attack or defense, set up in the pleadings, has been abandoned, such presumption can hardly be enforced, juris et de jure, or where, as in the present case, it becomes reasonably apparent that the intention to abandon never existed.
In our re-examination of the case we have failed to discover any reason for doubting the soundness of the proposition that a sale made by a sheriff without the authority of a judgment and writ or commission from a competent court is a nullity. The argument that the sheriff, being authorized by the judgment in the proceedings which are here attacked to sell the entire property, needed no writ or commission, and that his making the sale in two lots was a mere informality, is in the nature of petitio principii, since it assumes that his authority to sell proceeded directly from the judgment and included the authority to divide the single tract of land, the sale of which was decreed, into as many parts as he thought proper. The judgment in question was not, however, under the control of the sheriff, and he had no more right to execute it of his own motion than he would have had to execute any other judgment, or an order of seizure and sale upon which no writ had been issued; nor did he assume to do so. On the contrary, his proces verbal recites that he acted under the commission. Again, the judgment in question decreed the sale of the N. W. % of section 29, being a single tract of land, containing 161.22 acres, and the commission authorized the sheriff to sell the S. W. % of section 29, containing 161.21 acres, and, whether under the judgment or the commission, he had no more authority to sell, first the west half, and then the east half, of the tract, than he had to sell the tract, by separate adjudications, in lots of one acre each; nor was there any one in a position to disregard the mandate of the court and confer such authority on him. Succession of Bright, 38 La. Ann. 141. See, also, Landreaux v. Foley, 13 La. Ann. 116; Danneel v. Klein, 47 La. Ann. 980, 17 South. 466, cited in the original opinion.
It may be conceded, we think, that, where minors are sued for the partition of property which is shown to be indivisible in kind, the judge may order it to be sold, for cash, without the advice of a family meeting, and without regard to the appraisement; the case of a licitation provoked by a co-heir and a co-proprietor being an exception to the general rule that the property of a minor can be sold only upon the advice of a family meet *41 ing and for its appraised value. Civ. Code, arts. 345, 1314; Jacobs et al. v. Lewis’ Heirs, 8 La. 177; Shaffet v. Jackson, 14 La. Ann. 154; Life Associations of America v. Hall, 33 La. Ann. 52; Bayhi v. Bayhi, 35 La. Ann. 530; Crawford v. Binion, 46 La. Ann. 1266, 15 South. 693; Johnson v. Barkley, 47 La. Ann. 99, 16 South. 659. It is, however, the province of the judgment, ordering the sale to effect a partition, to fix the terms. Civ. Code, art. 1341, 1342, 1345; and, in the case here in question, that was not done, since the sale was ordered to be made for cash as to the interest of the plaintiffs, who were majors, and on terms to be fixed by a family meeting as to the interest of the defendants, who were minors, and no family meeting, within the meaning of the law, was ever held, so that, quoad the interest of the minors, the terms of sale were never fixed. The family meeting, as held, was illegal because (among other things) the minors were not represented by an undertutor, and that defect was not cured by tbe subsequent appointment of the husband of one of the major plaintiffs in the suit to that position and the homologation, nunc pro tunc, of the proceedings at his instance. Civ. Code, art. 276; Succession of Marinovich, 105 La. 106, 29 South. 500; Succession of Aguillard, 13 La. Ann. 97. Counsel for defendants insist upon the application of the prescription established by Civ. Code, art. 3543, which declares that:
“All informalities connected with, or growing out of any public sale * * * shall be prescribed against * * * after the lapse of five years, * * * whether against minors, married women, or interdicted persons.”
And they argue that:
“Any substantial omissions of legal duty, misconduct, or irregularity of an officer connected with the process, for which the sale might be held invalid, is an informality.”
The excerpt (from Words and Phrases Judicially Interpreted, vol. 4, p. 3584) relied on, and as given in the brief of the counsel, does not, however, support their proposition; the doctrine therein stated being that “within the meaning of a statute” entitling a tax purchaser, whose title has been declared null for informalities in the proceedings leading to the sare, to recover the price paid by him, any substantial omission is an informality,” which is quite different from the proposition that, within the meaning of the statute prescribing against informalities, the nullity of a judicial sale, resulting from lack of authority in the officer making it, is a mere informality. In. the case from which the excerpt is taken the court apparently held that, as the greater includes the less, so, if the price could be recovered where the title was found to be invalid by reason of informality in the proceedings, it could be recovered where the invalidity arose from something more serious. That argument, does not, however, tend to the conclusion that the less includes the greater, and that, because an attack upon a public sale, based upon informalities, is barred by the prescription of five years, therefore all attacks, including those based upon want of authority in the officer making the sale, are so barred. The question thus suggested was considered in a case in which a sale was attacked on the grounds that property in which minors were interested had been sold, some 20 years before, below its appraised value, and had been adjudicated to the tutrix, and that no under-tutor attended the family meeting by which the sale was advised, and our predecessors in this court said:
“The only question, then, is whether the prescription relied on extends to, and covers, such absolute nullities as those which exist in the sale to Pipkin’s widow, under which the defendant holds. The provision of law creating this prescription is the fourth section of an act entitled ‘An act relative to advertisements.’ Upon an attentive perusal of the whole law, it is difficult to believe that the expressions ‘all in-formalities connected with, or growing out of, any public sale,’ etc., were ever intended to embrace all kinds of illegalities or nullities whatever. They must, we think, be understood as *43 applying to the omissions of such formalities as relate to the manner, time, and pláce of making the advertisements required by law for all public sales. The counsel for the defendant has contended that this prescription extends to all causes of'nullity and to all illegalities which are within the provisions of the monition law, passed and approved on the same day. The terms of the two laws are widely different, and show that they were not intended to apply to the same objects. The monition law expressly mentions ‘all defects whatsoever and every informality in the order, decree, or judgment of the court, under which the sale was made, or any irregularity or illegality in the appraisement or advertisement, in time and manner of sale.’ Instead of these broad and comprehensive terms, the law relied on speaks only of informal-ities, and that, in connection with provisions of law relating exclusively to the advertisements required for public sales. An informality implies, to be sure, an illegality, because all formalities are prescribed by law; but a sale of a minor’s property may be illegal and null, although clothed with all the formalities required by law. This may happen, as in the present case, when the property is sold below its appraised value, or where it is adjudicated to a tutor or any other person who cannot legally purchase. Such nullities have nothing to do with the formalities required by law for the public sale of the property. They result from a violation of a prohibitory law.” Morton v. Reynolds, 4 Rob. 28.
Again, it was said:
“As to the prescription of five years, established by the act of 1834 [re-enacted in 1855 (Rev. St. p. 22, § 4; Rev. St. 1870, § 2809)] we have heretofore held, and have no reason to doubt the correctness of our determination, that it covers only informalities occurring in the manner of advertising and making public sales.” McCluskey v. Webb, 4 Rob. 206.
And again:
“The prescription of five years has been pleaded under the act of 1834, re-enacted in 1855, curing the informalities growing out of public sales. Philips, Dig. p. 22, § 4. We are of opinion that this statute does not cure the total want of authority to sell, but merely irregularities and informalities in the execution of the decree or other sufficient authority to sell.” Robert v. Brown, 14 La. Ann. 598.
See, also, Foster v. Roussel, 3 La. Ann. 546; Riddell v. Ebinger, 6 La. Ann. 407; Brooks v. Wortman 22 La. Ann. 492; Burns v. Van Loan, 29 La. Ann. 563; Fraser v. Zylicz, 29 La. Ann. 537.
Applying the doctrine of the cited eases to the facts here presented, we adhere to the view, expressed in the original opinion, that the prescription, established by Civ. Code, art. 3543, against attacks based on information, does not bar this action, because the terms of the sale here attacked, quoad the interest of the minors, were not fixed by the order of sale, or as contemplated by that order, and because the order contemplated the sale of the tract of land which was the subject of the partition as a whole, and hence that the sheriff, in selling the interest of the minors for cash, and in selling the tract in two parcels, by separate adjudications, acted without authority.
As against the plaintiff Adam Doucet, counsel for defendant also urge the prescription established by Civ. Code, art. 3542. The evidence shows that at the date of the institution of the suit (October, 1906) Adam Doucet was, say, 29 years old, from which it follows that he must have attained his majority in 1898, and must, thereafter, have allowed more than five years to elapse before attacking the sale, which had been made in 1894. The prescription established by Civ. Code, art. 3543, as we have noted, runs against minors as well as majors, but only as to informalities in the advertisement and manner of making public sales. The prescription established by Civ. Code, art. 3542, on the other hand, runs only against majors; but it applies to actions for the rescission of partitions, based upon any alleged nullity that might be ratified. The distinction between nullities which are susceptible of ratification and those which are not has been stated by this court as follows, to wit:
“If the contract is tainted with a nullity resting on motives of public order, or having its origin in the respect due to good morals, if it be prohibited by article 11 of the Code, it is an absolute nullity, to which the law perpetually resists. It is not susceptible of ratification; and the prescription of five years is inapplicable to it. * * * The other class of absolute null-ities is those established for the interest of ini dividuals, and in relation to those the rule, in *45 onerous contracts, is, -without exception, that the party in whose favor they are established may render valid the acts in which they are found by his ratification, express or implied. Toullier cites, as one of the absolute nullities of this class, the very case relied on by intervener’s counsel — the sale of the immovables of the min- or by his tutor. That sale, he says, is absolutely null, and yet the minor, after he becomes of age, may ratify it, not only expressly, but tacitly. * * * In all executed contracts, which, under this view of the law, may be tacitly ratified, a presumption juris et de jure of ratification results from silence and. inaction during the time fixed for prescription.” Vaughan v. Christine, 3 La. Ann. 328.
In a later case the plaintiffs sued to annul a partition made during their minority, and also to annul a subsequent transfer of the property, alleging that the proceedings were illegal and fraudulent. It was held (quoting the syllabus) that:
“The prescription of five years bars an action to rescind a partition.' The prescription runs from the majority of minors becoming of age, or from their full emancipation.” Sewall v. Hebert, 37 La. Ann. 155.
See, also, Cox v. Lea’s Heirs, 110 La. 1036, 35 South. 275.
We are, therefore, of opinion that, as to Adam Doueet, the plea of prescription, as founded on Civ. Code, art. 3542, should be sustained. As to the other plaintiffs the prescription is inapplicable, as the suit was instituted within five years after Joseph and Leon, and before Dominique, attained majority. The plea of estoppel by express ratification (i. e., by receipt of the price of the property sold) has no application whatever to Dominique, who was still a minor when this suit was brought (though he is now a major), and who has received nothing; and it is equally inapplicable to Joseph (or Der-bus), who was paid what was said to be his proportion of the price of the property during his minority. As to Leon, it is not -shown whether he was paid during his minority or afterwards; nor is it shown that he received the money with the intention of ratifying the sale. And no tacit approval or ratification of an act or contract is recognized, except that which results from the fact of suffering the time to elapse within which the rescissory action may be exercised. Copeland v. Mickie et al., 17 La. 286; McCarty v. Straus et al., 21 La. Ann. 592; Breaux v. Sarvoie, 39 La. Ann. 243, 1 South. 614.
It is therefore ordered, adjudged, and decreed that the judgment heretofore rendered in this case be amended by maintaining the plea of prescription, under Civ. Code, art. 3542, as against the demand of the plaintiff Adam Doueet, and, as amended, that said judgment be reinstated and made the final judgment of the court.